# EXHIBIT 1

**PERSONALIZED SEAFARER'S AGREEMENT**

**CARNIVAL CRUISE LINE**

| 1. | Date of Agreement  12th- February - 2022 | 2. | Place of Agreement  CARNIVAL VISTA |
|---|---|---|---|
| 3. | Ship Owner Address<br>Carnival Cruise Line<br>3655 NW 87th Avenue,<br>Miami, FL 33178-2428<br>USA | 4.<br><br>5.<br><br>6.<br><br>7.<br><br>8.<br><br>9. | Seafarer's Name   NELSON, DEAN WAYNE<br><br>Seafarer's Crew Number   551501<br><br>Seafarer's Date of Birth  07-MAR-96<br><br>Seafarer's Place of Birth<br><br>Seafarer's Home Address ,,,,NIC<br><br>Seafarer's Telephone Number |
| 10.   Embarkation Ship  CARNIVAL VISTA<br><br>11.   Embarkation Location  GALVESTON, TX<br><br>12.   Embarkation Date  12-FEB-22 | | 13.   Expected Position  GALLEY ATTENDANT<br><br>14.   [ ] Tipping ‖ [X] Non-tipping<br><br>15.   Department AUX SERV<br><br>16.   Duration of Agreement (See Annex 1) | |

17. **Daily Wage, under Paragraph 3.C. / 3D. or 3E.** $ 20.0802      USD

18. **Gratuity Wage (minimum monthly, if applicable), under Paragraphs 3.D. and 3.E.** $N/A_____ USD

19. **Non-Function Pay, under Paragraph 3.H.** $N/A_____ USD per day.

20. **Overtime Wage (if applicable), under Paragraph 3.C(i).** $ 2.4186_____ USD per hour.

21. **Alternative Services Pay (ASP) (if applicable).** $   17.1132_____ USD per day.

22. **Monthly Wage, under Paragraph 3.C(i).** $ 609.10_____ USD

23. **Sick Wage, under Paragraph 3.I.** $18.9560_____ USD per day. (equivalent to $ 575.0000____ USD per month)

24. **Vacation Wage. See Paragraph 3.B.**

25. **Carnival Studio ONLY: Training Per Diem, under Paragraph 3.C.(iv).** $N/A_____ USD

26. **Carnival Studio ONLY: Daily Training Rate, under Paragraph 3.C.(iv)(a).** $ N/A_____USD

27. **Carnival Studio ONLY: Daily Consolidated Training Rate, under Paragraph 3.C.(iv)(b).** $ N/A_____ USD

28. **Carnival Studio ONLY: Overtime Per Hour, Over 56 Hours Worked, under Paragraph 3.C.(iv)(b).** $ N/A_____ USD

Page **1** of **2**

| | | | |
|---|---|---|---|
| 29. | Australia ONLY: Daily Wage, under Paragraph 3.C.(ii). $ N/A USD | | |
| 30. | Australia ONLY: Monthly Wage, under Paragraph 3.C.(ii). $ N/A USD | | |
| 31. | Australia ONLY: Alternative Services Pay (ASP), under Paragraph 3.C.(ii). $ N/A USD per day. | | |
| 32. | Australia ONLY: Minimum Consolidated Monthly, under Paragraph 3.C.(iii). $ N/A USD | | |
| 33. | THIS PERSONALIZED SEAFARER'S AGREEMENT, CONSISTING OF 2 PAGES, INCORPORATES ALL TERMS FROM CARNIVAL CRUISE LINE'S STANDARD SEAFARER'S TERMS AND CONDITIONS, CONSISTING OF 8 PAGES, A COPY OF WHICH IS ATTACHED. | 34. | THIS PERSONALIZED SEAFARER'S AGREEMENT IS SUBJECT TO AN ARBITRATION PROVISION FOR ANY AND ALL DISPUTES, EXCLUDING WAGE GRIEVANCES. THE ARBITRATION PROVISION IS LOCATED IN PARAGRAPH 9 OF CARNIVAL CRUISE LINE'S STANDARD SEAFARER'S TERMS AND CONDITIONS. THERE IS A CHOICE OF LAW PROVISION REGARDING THE ARBITRATION IN PARAGARPH 10 OF CARNIVAL CRUISE LINE'S STANDARD SEAFARER'S TERMS AND CONDITIONS. |

The undersigned Seafarer has read, understands and accepts the terms and conditions of employment as contained and incorporated herein. It is agreed by and between Seafarer and Carnival Cruise Line ("CCL") that the parties entered freely into this Personalized Seafarer's Agreement. It is further agreed by the parties that the language of this Personalized Seafarer's Agreement cannot be construed against the drafter because it represents the parties' mutual and bargained for terms and conditions for Seafarer's employment. The Seafarer acknowledges his/her separate and independent duty to abide by all other oral and written rules, regulations and standards of CCL and/or the vessel's operator and/or the ship's command.

In consideration for the offer of employment made herein, Seafarer accepts each and every term and condition of this Personalized Seafarer's Agreement and Carnival Cruise Line's Standard Seafarer's Terms and Conditions, including but not limited to the provisions and limitations of paragraphs 2 and 3 (including all subparts) and the Arbitration/Choice of Law provisions in paragraphs 9, 9.A and 10. Seafarer acknowledges that CCL would not have entered into this Personalized Seafarer's Agreement or otherwise employed Seafarer if Seafarer had not agreed to all such terms and conditions. Thus, the application for employment having been accepted by CCL and the terms and conditions of employment having been agreed by and between both the Seafarer and CCL, the undersigned hereby enters into this Personalized Seafarer's Agreement this 12th day of February , 20 21 , on the CARNIVAL VISTA.

By. _[signature]_
**Seafarer's Signature**

NELSON, DEAN WAYNE/551501
**Print Name/Crew I.D. Number**

By. _[signature]_
**CCL Human Resources Representative**

FRANCES MARIE GONZALEZ/276919
**Print Name/Crew I.D. Number**

**STANDARD SEAFARER'S TERMS AND CONDITIONS**
**CARNIVAL CRUISE LINE**

**The Application having been submitted by the Seafarer named below to Carnival Cruise Line, a division of Carnival Corporation ("CCL") with its principal place of business located at 3655 NW 87th Avenue, Miami, Florida 33178, and CCL having considered said Application, these Standard Seafarer's Terms and Conditions, which are incorporated in their entirety into the Personalized Seafarer's Agreement (collectively the/this "Agreement"), is hereby mutually agreed upon, consented to, and entered by and between CCL and Seafarer, pursuant to the terms and conditions set forth below. Any other arrangements, agreements, or understandings regarding terms of employment that are not contained within the Personalized Seafarer's Agreement or these Standard Seafarer's Terms and Conditions are hereby canceled and superseded, and no amendment or exceptions to this provision are valid. Seafarer shall not rely upon any statements or representations, whether orally or in writing, contrary to this Agreement concerning wages, tips, and other terms and conditions of service. The paragraph headings in this Agreement are solely for reference purposes only and shall not affect the meaning or interpretation of this Agreement.**

1. The Seafarer agrees to work aboard any assigned vessel operated by CCL or any of its affiliated companies, regardless of the class or location of the assigned vessel. Once a Seafarer has been assigned to a vessel, he or she remains assigned to that vessel only, unless and until reassigned to a different vessel at CCL's sole discretion. CCL reserves the right to change the Seafarer's assigned vessel at any time without prior notice. *From time to time as the operational and administrative needs of CCL may require, Seafarer may be placed in a different position than stated in an employment letter or in Seafarer's Agreement until such time as the indicated position is available on the vessel. Seafarer's wages will be paid commensurate with the level of the assigned position not the expected position. CCL will attempt to place Seafarer in the expected position onboard the vessel within a period of time not to exceed four weeks from the date Seafarer signs on board the vessel with no additional compensation. If CCL is not able to place the Seafarer in the expected position within a four-week period, CCL shall offer Seafarer a vessel transfer in the expected position or the opportunity to terminate this Agreement. If the Seafarer elects to terminate the contract under this Article, CCL shall bear the expense of return air travel.*

1.A. The italicized portion of paragraph 1 above will not apply to Production Staff or Musicians.

2. This Agreement shall be effective upon the Seafarer's reporting to work onboard an assigned vessel. The parties agree that the employment relations between them shall be governed by the terms of this Agreement commencing on the date the Seafarer first signs onboard the assigned vessel after signing this Agreement and continuing for a period of time as indicated in Annex 1 of this Agreement. Employer reserves the right to reduce or extend Seafarer's tour of service for up to two (2) months to meet operational or vessel positioning requirements. This Agreement shall automatically terminate without notice immediately upon Seafarer's unscheduled disembarkation of the assigned vessel if Seafarer disembarks the vessel for any reason, including but not limited to unscheduled personal leave, illness or injury, for more than one full voyage. This Agreement shall also terminate without notice immediately upon Seafarer being unfit or unable to serve in his or her stated position at the commencement of a new voyage. If the Seafarer remains on the assigned vessel after the commencement of a new voyage, he or she would do so as an invitee and would no longer be considered a member of the vessel's crew. Seafarer's status as a member of the crew would not resume until the Seafarer actually returns to serving in his or her stated position. This Agreement shall be deemed terminated upon achievement by the Seafarer of the age of 67 years. The minimum written notice to be provided by either the Seafarer or CCL for the early termination of this Agreement is fifteen (15) days; except shorter written notice may be provided for valid reasons based on compassionate grounds; any serious breach of conditions of employment as determined by CCL; or any serious breach of CCL's Code of Conduct as determined by CCL, in which case this Agreement may be immediately terminated by CCL.

2.A. **Government and Administrative Health and Safety Protocols.** Seafarer agrees that he/she will comply with all applicable health and safety protocols. This includes, but is not limited to, health and safety protocols implemented to comply with applicable government laws and regulations, including any mandatory quarantine or isolation periods beginning immediately when Seafarer embarks on his/her assigned vessel when Seafarer is not permitted to work in their assigned position ("Commencement Period"). During the Commencement Period or similar periods where Seafarer is not permitted to work in their assigned position due to government laws or regulations Seafarer will be paid a daily amount equal to fifty percent (50%) of the Total Consolidated Daily Wage, as detailed by Paragraph 2.A.(i) of this Agreement (plus unpaid leave), but in any event not less than any flag state minimum wage, until such period ends.

2.A. (i) **Total Consolidated Daily Wage.** The Total Consolidated Daily Wage consists of a Seafarer's (1) base wage, as applicable to his or her expected position, (2) guaranteed overtime, if applicable, (3) vacation pay, if applicable (4) holiday pay, if applicable, and (5) Alternative Services Pay (ASP), if applicable.

2.B. **CCL's Health and Safety Protocols.** Seafarer agrees that he/she will comply with all of CCL's health and safety protocols. Seafarer agrees that he/she may be subject to self-quarantine, isolation, daily testing—including blood tests, urine tests, and swabs—temperature checks, facial covering requirements, following social distancing guidelines, and any other measure included in CCL's health and safety protocols or otherwise deemed necessary by CCL to ensure the safety of both the Seafarer, other crew, and passengers onboard the ship. Seafarer agrees to accurately self-report to their assigned supervisor any illness or symptoms of illness. Seafarer agrees that any refusal of testing or failure to accurately self-report illness or symptoms of illness is grounds for immediate termination of this Agreement and Seafarer's employment with CCL.

3.A. Seafarer's right to receive any wages is conditioned upon his or her actual signing on as a member of the assigned vessel's crew and serving in his or her assigned position. In the case of seafarers assigned to the Carnival Studio facility, the right to receive the training rate and per diem rate stated in paragraph **3C.(iv)** is conditioned upon signing onto the facility.

Seafarers will have records of their pay and payment transactions available to them at the Paymaster office should they choose to retrieve it. Records will be available for each pay period.

3.B. A week of work is always calculated from Sunday to Saturday, consisting of 42 hours base time and 28 hours overtime, whether overtime is worked or not worked, for a total work week of 70 hours. The Seafarer shall also be paid vacation pay at the rate of one day per eleven days worked as well as a holiday pay at a rate equal to 11 days of the Seafarer's basic wage and regular overtime. For Seafarers with a basic daily wage less than $11.54 USD, this will be calculated at $11.5385 USD.

3.C. (i) Except for seafarers covered under Paragraphs 3.D. and 3.E., below, Seafarer shall be paid a wage for each day of work, which shall include the Seafarer's basic wage, regular overtime and ASP (Alternative Services Pay), if applicable, based on seafarer's position. This daily rate translates to a monthly wage, as totaled in Paragraph 22 of the Personalized Seafarer's Agreement. Seafarer agrees that extra overtime is time worked in excess of 70 hours per week according to CCL's records. Seafarer shall be paid per hour for extra overtime worked provided, however, that payment for extra overtime worked shall not apply to (i) any seafarer who receives payments through the Service Gratuity program, , bonus payments, special event and discretionary payments that will be received by seafarer as a substitute for and in lieu of, extra overtime wages or (ii) any seafarer working in a management or Department Head capacity. It is understood and agreed that Seafarer has no entitlement or right to work or to be assigned to work extra overtime, which is assigned at the discretion of CCL on an "as needed" basis.

(ii) **Australia ONLY** (Housekeeping and Restaurant Personnel). Each seafarer serving on a ship that is home-ported in Australia either seasonally or year around during their service, and who are serving in Housekeeping or Restaurant positions traditionally designated as gratuity-earning by CCL, will be paid a total consolidated wage during the time the ship is home ported in Australia. Seafarer shall be paid the monthly wage, which shall include the Seafarer's basic

wage, regular and extraordinary overtime, and ASP (Alternative Services Pay) if applicable, based on seafarer's position. This paragraph will only apply during such time as the ship is home ported in Australia.

(iii) **Australia ONLY** (Bar Staff). Each seafarer serving on a ship that is home-ported in Australia either seasonally or year around during their service, and who are serving in positions traditionally designated as gratuity-earning by CCL, will be paid a minimum consolidated monthly amount, which shall include the Seafarer's basic wage, which includes all regular and extra overtime. If Seafarer is employed in an eligible position within the bar staff, he/she may receive discretionary performance payments in the form of "Bar Position Pay Levels". The eligibility, timing, and amounts (if any) of the Bar position pay Level payments shall be determined by CCL in its sole discretion. Any additional amount received over the basic wage and minimum monthly amount is not guaranteed. This paragraph will apply only during such time as the ship is home ported in Australia.

(iv) **Carnival Studio ONLY**. All seafarers training at Carnival Studio shall be provided a per diem for each day assigned to Carnival Studio, and shall also be provided housing at CCL's expense.

    (a) **Production Staff and Musicians.** While assigned to training at Carnival Studio in the position of  N/A  shall be paid a daily training rate.

    (b) **Entertainment Technicians.** While assigned to training at Carnival Studio shall be paid a daily consolidated training rate.

This consolidated training rate shall include wages for 40 regular hours and up to 16 hours of overtime. Technicians will be paid a specified amount for any hour(s) worked over 56 hours as determined by CCL's records.

**3.D**. **Tipping Personnel ONLY** (excluding Bar Staff). Seafarer shall be paid a basic wage for each day of work. Seafarer shall also be entitled to receive a minimum monthly amount, as set forth in Paragraph 18 of the Personalized Seafarer's Agreement from the Service Gratuity program administered by CCL calculated over the term of the contract period or an applicable period as provided for in CCL's dry dock policy or work break policy, (meaning that the actual monthly amount may be lower or higher during the contract period but will, on average, be no less than the specified monthly amount during the contract period). Any additional amount received over the basic wage and minimum monthly amount is not guaranteed, is solely a distribution of the funds contributed by passengers to Carnival through the Service Gratuity program, and is not a personal wage. Seafarer agrees that the minimum monthly amount may be adjusted downward in proportion to the percentage of occupied lower berths (i.e. 80% occupied means the Seafarer may receive 80% of the minimum monthly amount).

**3.E.** **Bar Staff ONLY.** Seafarer shall be paid a basic wage for each day of work. Seafarer shall also be entitled to receive a minimum monthly amount, as set forth in Paragraph 18 of the Personalized Seafarer's Agreement from the Service Gratuity program administered by CCL calculated over the term of the contract period or an applicable period as provided for in CCL's dry dock policy or work break policy, (meaning that the actual monthly amount may be lower or higher during the contract period but will, on average, be no less than the specified monthly amount during the contract period). As part of the Service Gratuity program, if Seafarer is employed in an eligible position within the Bar Staff, he/she may receive discretionary performance payments in the form of "Bar Position Pay Levels" (paid from the Service Gratuities automatically assessed for Bar services) and a "Bar Stipend" (to account for certain ship itineraries or deployments which underperform compared to the average level of passenger contributions collected across the fleet). The eligibility, timing, and amounts (if any) of the Bar Position Pay Level and the "Bar Stipend" payments shall be determined by CCL in its sole discretion. Any additional amount received over the basic wage and minimum monthly amount is not guaranteed, is solely a distribution of the Service Gratuity contributions from passengers to Carnival through the Service Gratuities, and is not a personal wage. Seafarer agrees that the minimum monthly amount may be adjusted downward in proportion to the percentage of occupied lower berths (i.e. 80% occupied means the Seafarer may receive 80% of the minimum monthly amount).

**3.F.** The compensation paid to Seafarer under Paragraphs 3.C., 3.D. or 3.E. shall be received by Seafarer as a substitute for and in lieu of, any overtime wages. Seafarer agrees and acknowledges that the Service Gratuity program is administered by CCL in its sole discretion and that subject to the payment of the minimum monthly amount set forth in Paragraphs 3.C., 3.D. or 3.E. (as applicable), CCL may distribute monies collected under the program in CCL's sole discretion (including the amount, timing and form of payment) to any seafarer who CCL designates as being eligible to participate in the program including seafarers who receive ASP or bonus payments funded from the program and including hotel, dining, entertainment, and other guest facing positions and back of house and other support personnel. Eligibility of Seafarer to participate within the Service Gratuity program (including seafarers' eligibility to receive ASP or bonus payments funded from such program) and the level of participation are subject to change from time to time based on CCL discretion. Seafarer further acknowledges and agrees that the Service Gratuity program is funded through a voluntary contribution by each passenger for the benefit of a broad group of eligible seafarers as designated by CCL from time to time. Passengers are not obligated to make a contribution or to adhere to CCL's suggested guidelines for such a contribution. Nonetheless, to the extent passengers follow the suggested contribution guidelines in whole or in part, and deliver their contribution to CCL, Seafarer agrees that any such contribution is not his or her personal wage, but rather a contribution to the overall Service Gratuity program administered by CCL. CCL shall distribute the funds contributed by the passengers to eligible seafarers less credit card transaction fees (to be paid from such funds in CCL's sole discretion). There are separate pools for those positions noted in Paragraph 3.D. and Bar Staff as detailed in Paragraph 3.E. Seafarer agrees that CCL reserves and has the exclusive right to determine, in its sole discretion, the eligibility and number of total crew members entitled to share in the Service Gratuity program (including those eligible to receive ASP or bonus payments funded from the program) and to set each seafarer's distribution of the funds in the program subject only to the monthly minimum compensation set forth in Paragraphs 3.C., 3.D or 3.E., as applicable.

**3.G.** In the event Seafarer believes he or she has worked more hours than documented on Seafarer's or CCL's time records, or that any earned wages of any type are due and owing, Seafarer must comply with the CCL's Wage Grievance Policy and Procedure attached as Annex 2, including the requirement for mandatory binding and final arbitration of all claims for wages of any type. Seafarer hereby requests, consents to and authorizes CCL to arrange for, in CCL's sole discretion, payment of wages by cash, check, negotiable instrument, wire transfer, direct deposit, pay card or any other commercially available method for the efficient, practical and prompt payment of wages earned during the Seafarer's employment. In consideration for his/her employment, the Seafarer's request, consent and authorization extends to, without limitation, deposit of wages into an account to secure a payroll, debit or stored value card, or any other account for the benefit of the Seafarer, as may be arranged by CCL from time to time.

**3.H.** **Non-Function Pay.** In the event a Seafarer who may receive tips by virtue of his/her position works under this Agreement during a period when the ship is out of regular service for any reason, such as in dry-dock, during a trans-oceanic crossing, during an unscheduled extended voyage where Service Gratuities are not collected from guests or while involved in inaugural functions, or the Seafarer is working but is not aboard ship, he/she is to be paid a specified amount for each day of work as set forth in Paragraph 19 of the Personalized Seafarer's Agreement.

**3.I.** Seafarer acknowledges and agrees that where sickness or injury results in incapacity to work on board the vessel, he/she shall be paid a sick wage as set forth in Paragraph 23 of the Personalized Seafarer's Agreement beginning from the day of disembarkation due to sickness or injury until the day of recovery, but for no longer than 16 weeks from the commencement of the sickness or injury. Seafarer shall not be entitled to participate in the CCL Service Gratuity program, ASP or any other bonus program while receiving sick pay. In the event Seafarer is signed off duty due to illness or injury, CCL reserves the right to provide medical treatment aboard its vessel or ashore in either the vessel's home port, a regular port of call, in Seafarer's home nation, or any other location where Carnival is able to provide adequate medical care, at CCL's sole option, notwithstanding the automatic termination of this Agreement in such circumstances. Seafarer shall be entitled to receive board and lodging while receiving medical care away from home subject to and in accordance with CCL policies.

**3.J.** In addition to the medical care and partial wage benefit described in paragraph 3.I. above, the following benefit programs are offered to Seafarers subject to eligibility requirements and the specific terms and conditions of such programs: (1) retirement benefit; (2) death benefit; (3) smoking cessation program; (4)

hypertension/diabetes screening; (5) board and lodging while receiving medical care away from home; (6) pregnancy and pre-natal care; and (7) Seafarer's family cruise benefits as detailed in the Seafarer's Manual and Team Carnival Handbook as amended by CCL from time to time.

**3.K.** In the event Seafarer returns to work after this Agreement has automatically terminated pursuant to paragraph 2, then Seafarer's return to active duty shall be deemed to be the commencement of a new and separate Seafarer's Agreement under the same terms and conditions set forth herein and said terms will be in force and effect until such time as a new Seafarer's Agreement is executed.

**3.L.** The parties acknowledge and agree that should the assigned vessel be under construction at a shipyard and until the vessel starts navigation, Seafarer may be required to work on "comandata" regime on board of such vessel for all the duration of the construction operations or for a different term as indicated by CCL from time to time. During the "comandata" regime period, Seafarer shall perform his/her shipboard duty with the aim of familiarizing with the vessel's facilities and organization. For all the duration of the "comandata" regime, Seafarer will be subject to the same terms and conditions of employment provided in this Agreement. If the Seafarer's scheduled work assignment falls during a wet dock or dry dock, Seafarer may be signed off the assigned vessel prior to said wet dock/dry dock and, if so, will not be under CCL's employ during said periods of time. If the Seafarer remains on the vessel during said periods, he/she does so either as a business invitee or under the "comandata" regime as specified above until the vessel is returned to navigation.

**4.** Seafarer acknowledges that he or she has received and review the Team Carnival Handbook and will comply with it. Seafarer acknowledges that as a Seafarer he/she is required at all times to comply with and abide by the assigned vessel's rules and regulations; the Team Carnival Handbook, as well as all other oral and written rules, regulations and standards of CCL and/or of the operator of the assigned vessel and/or of the ship's command for the assigned vessel. Any violation of any such rules, regulations, policies, procedures and/or standards may result in disciplinary action, up to and including automatic termination. This Agreement in no way diminishes or modifies the Seafarer's independent duties as a Seafarer to comply with any such rules, regulations, policies, procedures and/or standards.  Seafarer shall have the right to lodge an on board complaint of a non-wage nature in accordance with Annex 3.

**5.** **Repatriation.** Seafarer shall be repatriated by CCL to Seafarer's country of residence as recorded by CCL in its Crew Personnel System. Seafarer shall be liable for his or her own repatriation expenses in the event he or she has been found to be in material default of this Agreement. In case of ship's loss or foundering, resulting in the termination of this Agreement, Seafarer shall receive a repatriation ticket and adequate compensation, from the date the Seafarer remains unemployed, at a rate equal to the wages payable under this Agreement, but limited to up to three months wages.

For the loss or damage to the Seafarer's personal effects due to the wreck, loss, stranding or abandonment of the vessel that they are serving on or as a result of fire, flooding, collision or piracy, the Seafarer shall be entitled to reimbursement by the employer up to a maximum of $1,000 USD upon presentation of proof of value. CCL shall not be responsible for any loss of personal effects due to the seafarer's own fault, larceny, theft, or robbery. In cases where Seafarer is held captive on or off the ship during the contract term as a result of acts of piracy or armed robbery against the ship, Seafarer shall continue to receive wages during the entire period of captivity and until Seafarer is duly released and repatriated pursuant to this Paragraph.

**5.A.** **Repatriation travel.** In the event the time to repatriate Seafarer is delayed, extended or elongated by government restrictions or force majeure events, Seafarer agrees that travel pay, if any, during repatriation shall not, for any reason, exceed a period of two (2) days.

**5.B.** **Post-Contract Status.** At the completion or termination of this Agreement, and until the time at which the Seafarer is disembarked from a CCL ship, the Seafarer shall be deemed a gratuitous invitee of CCL. This includes, but is not limited to, situations in which the Seafarer suffers personal injury, but is off contract and not working, if the Seafarer suffers personal injury while traveling to or from a CCL vessel, or during a Force Majeure event as defined in Paragraph 17 of this Agreement.

**6.** At the completion of the contract, Seafarer will receive a record of employment in the format and type approved by the Flag State Administration.

**6.A.** During a post-contract repatriation period, Seafarer will not be working and will not be in service of the vessel, but will receive lodging, food, and medical care. Seafarer will not receive any wages during this time, except for as provided in Paragraph 5.A. of this Agreement.

**7.** **Medical Care and Sick Wage Disputes.** CCL shall have no obligation to provide medical care or pay sick wages for any illness or injury unless Seafarer reported the same condition to the shipboard medical center before signing off the ship, and there is a written record onboard the ship of such report. The Parties agree that all disputes involving medical care and sick wages and all disputes regarding post-contract illness, injury, and medical issues arising from Seafarer's employment with CCL shall be governed by the arbitration provision in Paragraph 9, the survival clause provision in paragraph 14, and the governing law provision in paragraph 10 of this Agreement. This includes medical conditions that are not discovered until after the Seafarer completes this contract and returns to his or her home country.

**8.** **Death Benefit.** In the event of Seafarer's death while performing his assigned work on an assigned vessel, CCL will voluntarily pay his/her designated beneficiary the amount of $50,000 USD (Fifty Thousand USA Dollars and No Cents). This Death Benefit is provided voluntarily as an accommodation to the designated beneficiary and for the peace of mind of the Seafarer. The Seafarer also requests that CCL distribute any wages, benefits and/or personal belongings to the following individual with the exception of any monies which may be due for the Fun Ship Retirement Plan which has a separate form for the designation of the desired recipient in the event of death. In the event the Seafarer is deceased and there is no retirement beneficiary form on file, the person designated below shall receive the Seafarer's retirement benefit, if any and less any loans and interest. The Seafarer shall be responsible for making any changes to the below designation. The name of the beneficiary in the most recently signed Seafarer's Agreement shall control over any prior designations. If Seafarer wishes to change his or her designated beneficiary, Seafarer must contact the HR Services Office to arrange for a new designated beneficiary. Seafarer hereby designates:

| NAME | RELATIONSHIP | TELEPHONE |
|---|---|---|
|  |  |  |

ADDRESS (Include: Country, State, City, Street, House/Apartment Number, and Zip Code)

This death benefit shall be null and void if the death is the result of, arises from or is related to any of the following:

A.     The Seafarer's intentional violation of any of the assigned vessel's rules and regulations; or any violation of the rules, regulations, policies, procedures and/or standards described in this Agreement, the Team Carnival Handbook, or any other oral or written rules, regulations and standards of CCL and/or of the operator of the assigned vessel and/or of the ship's command for the assigned vessel.

B.     The Seafarer's willful misconduct, including but not limited to illegal or illicit drug use, alcohol abuse, fighting, physical violence by Seafarer, self inflicted wounds and/or suicide.

9. **Arbitration.** Except for a wage dispute governed by CCL's Wage Grievance Policy and Procedure, any and all disputes, arising out of or in connection with this Agreement or Seafarer's service on the vessel, no matter how described, pleaded, or styled including but not limited to constitutional, statutory, common law, admiralty, personal injury, intentional tort, contract, equitable claims, claims of injury, medical and lodging benefits claims, inadequacy or improper care claims, or employment disputes, whether accruing prior to, during or after the execution of this Agreement, shall be resolved by final and binding arbitration on an individual basis. In addition, Seafarer agrees to arbitrate on an individual basis any and all disputes regarding the existence, validity, termination or enforceability of any term or provision in this Agreement, including but not limited to this provision to arbitrate. All Arbitration between the parties shall be referred to and finally administered and resolved by National Arbitration and Mediation (NAM) under its Comprehensive Dispute Resolution Rules and Procedures as adapted for Seafarer/Crew-Member Employment Arbitrations and fee schedule (which may be amended from time to time) in effect at the time of initiating a proceeding with NAM, which Rules, as amended, are deemed to be incorporated by reference to this Agreement. The number of arbitrators shall be one. The seat of the arbitration and the final hearing shall be either in Panama City, Panama or Manila, Philippines whichever is closer to Seafarer's home country. The Arbitrator shall be either a member of the Bar of the location determined to be the seat of the arbitration proceeding or of the applicable flag-state as determined in paragraph 10 of this Agreement. The Seafarer and CCL must arbitrate in the designated jurisdiction, to the exclusion of all other jurisdictions. The language of the arbitral proceedings shall be English. Each party shall bear its own attorney's fees and costs associated with maintaining an action in arbitration, including, but not limited to, travel, lodging, expert(s) and court reporter(s) fees and costs, regardless of any rules or laws to the contrary. Seafarer and CCL agree to each pay one-half (1/2) of the fees required to initiate arbitration under the terms of this Agreement. The arbitration shall not commence until both parties pay their portion of the required fee. Once arbitration is commenced, CCL shall pay for the all other reasonable administrative costs of arbitration and fees of the arbitrator as assessed by NAM. The Parties agree to the exchange of information as required by NAM's procedures, as amended. At CCL's request, Seafarer agrees to appear at his expense for medical examinations by doctors designated by CCL in specialties relevant to any claims Seafarer asserts. Otherwise the parties agree to waive any and all rights to compel information from each other. The parties agree that there shall be no award of pre-judgment interest or injunctive relief in any arbitration proceeding between the Seafarer and CCL.

9.A. **Appeal of Arbitration.** If and only if an arbitration initiated under the terms of this Agreement results in a final award of greater than $1,000,000 USD, either Seafarer or CCL may appeal the final award pursuant to NAM's Appellate Resolution Rules and Procedures. The appellate panel shall consist of three neutral arbitrators chosen by the parties. If Seafarer and CCL cannot agree on three neutral arbitrators for the appellate panel, Seafarer and CCL agree to consent to NAM appointing the three neutral arbitrators. The party seeking the appeal shall pay all reasonable administrative costs of the appeal and fees of the neutral arbitrators as assessed by NAM.

10. **Governing Law.** The substantive law that governs this Agreement, Seafarer's employment, and Seafarer's and CCL's relationship, which is to be applied to the arbitration of any and all claims whatsoever, no matter how described, pleaded, or styled, shall be that of the laws of the flag state of the vessel on which Seafarer is assigned at the time the cause of action accrues, without regard to principles of conflicts of laws thereunder except for any and all claims arising aboard the Carnival Spirit and Carnival Legend, which shall be governed by Panama law without regard to the law of the flag of that vessel or principles of conflicts of law. The parties agree to this governing law notwithstanding any and all claims, no matter how described, pleaded, or styled which might be available under the laws of any other jurisdiction.

11. **Limitation of Claims.** Any action or arbitration to recover on any claim whatsoever, no matter how described, pleaded, or styled shall not be maintainable by Seafarer unless initiated within three years from the date of the incident underlying the claim, unless a shorter limitations period applies in accordance with the Governing Law provision in Paragraph 10 of this Agreement. Seafarer expressly waives all other potentially applicable limitations period for initiating claims.

12. **Class Action Waiver.** This Agreement provides for the exclusive resolution of disputes on Seafarer's own behalf instead of through any class action. Even if the applicable law provides otherwise, Seafarer agrees that any claim whatsoever shall be arbitrated by Seafarer individually and not as a member of any class or as a part of a class action, and Seafarer expressly agrees to waive any law entitling Seafarer to participate in a class action. The arbitrator shall have no authority to arbitrate claims on a class action basis. If for any reason the Arbitration provision in Paragraph 9 is unenforceable, this Class Action Waiver shall apply with equal force to any legal action for any and all disputes, arising out of or in connection with this Agreement or Seafarer's service on the vessel.

13. **Confidentiality.** Seafarer and CCL hereby agree that all information disclosed in connection with arbitration shall not be made public or disseminated by any means, including but not limited to, disclosure to public press or media, any social networking site or electronic media, or other person or entity, who could reasonably be anticipated to cause said information to be disseminated to the public. Unless otherwise agreed by the parties in writing, or required by applicable law, the parties, members of the tribunal and the administrator shall keep confidential all matters relating to the arbitration or award. Any party who discloses information in violation of this provision shall be subject to sanctions, including but not limited to vacating the arbitration award, monetary sanctions, and imposition of attorney's fees and costs.

14. **Survival Clause.** The parties' agreement to arbitrate in Paragraphs 9 and 9.A. of this Agreement and the governing law provision in Paragraph 10 of this Agreement shall survive the termination or ending, for any reason, of this Agreement and shall continue to apply in full force and effect and bind the parties as required herein.

15. Seafarer hereby authorizes CCL and its designated agents and representatives to conduct a review of my background for the purpose of verifying my eligibility for employment. Such review may cause a consumer report and/or an investigative consumer report to be generated. I further authorize any individual, company, firm, corporation, or public agency to divulge any and all information, verbal or written, pertaining to me to Carnival Cruise Line or its agents. I further authorize the complete release of any records or data pertaining to me which the individual, company, firm, corporation, or public agency may have, to include information or data received from other sources. Seafarer hereby releases CCL, its agents, officials, representatives, and assigned agencies, including officers, employees, or related personnel both individually and collectively, from any and all liability for damages of whatever kind, which may result from the review authorized herein.

16. Seafarer hereby acknowledges and agrees that in connection with his or her duties the Seafarer will or may be exposed to second hand tobacco smoke. Seafarer acknowledges and agrees that CCL cannot guarantee that Seafarer will not be exposed to second hand smoke while onboard the vessel. Seafarer agrees not to enter into this contract if exposure to second hand smoke would cause Seafarer to have any health or other concerns.

17. **Force Majeure.** A force majeure event for purposes of this Agreement is an event that occurs which is beyond the reasonable control of the parties, such as an epidemic, pandemic, act of God, war, piracy, or government action, which affects, impedes, prevents, or hinders a party's ability, in whole or in part, to perform its obligations under this Agreement or to perform its obligations to third-parties, and as to which a party took reasonable steps to avoid or mitigate the consequences. This clause includes, but is not limited to, a halt, in whole or in part, in CCL's operations for any reason, and also includes both foreseeable and unforeseeable events.

17.A. CCL may terminate this Agreement immediately if a force majeure event occurs and lasts for more than fifteen (15) days, except when and only when, Seafarer is held captive on or off the ship as a result of acts of piracy or armed robbery against the ship, in which case this Agreement shall continue in effect regardless of whether the date fixed for its expiry has passed or either party has given notice to suspend or terminate it.

17.B.    Seafarer agrees, notwithstanding any law to the contrary, during any force majeure event, or if this Agreement is terminated due a force majeure event or any other reason, that the sole obligations of both parties are as described herein.

18.    **Duty to Report Injury.** Seafarer must immediately notify their supervisor or a manager in the case of shipboard accidents or incidents that result in injury. Seafarer must also report to the medical center on the ship in such an event. Seafarer's failure to report under this paragraph is a breach of this Agreement, which will be construed against Seafarer as a negative inference (i.e. the alleged injury did not occur because it was not reported) in any subsequent claim brought by Seafarer based on that injury.

19.    **Shore leave.** Seafarer acknowledges that his or her ability to leave the vessel may be reduced or eliminated based on the sole discretion of CCL or the Master, and is also subject to applicable government regulations and CCL company policies. Seafarer acknowledges that if CCL or the Master decide to reduce or eliminate Seafarer's ability to leave the vessel, it is in the best interest for the health and safety of Seafarer, other crew, and passengers onboard the vessel. Seafarer agrees that failure to comply with CCL's shore leave rules under this paragraph and all other applicable provisions is grounds for immediate termination of this Agreement and Seafarer's employment with CCL.

20.    **Severability.** If any provision, term, or condition of this Agreement is invalid or unenforceable for any reason, it shall be deemed severed from this Agreement and the remaining provisions, terms, and conditions of this Agreement shall not be affected thereby and shall remain in full force and effect.

21.    **Commercial Legal Relationship.** Seafarer and CCL acknowledge and agree that Seafarer's employment with CCL constitutes a commercial legal relationship between the parties.

22.    Seafarer acknowledges he or she had the opportunity and ample time to read and consider this Agreement before entering into such Agreement. Seafarer further acknowledges he or she had an opportunity to seek advice on the terms of this Agreement before entering into the Agreement.

23.    This Agreement constitutes the sole and entire employment Agreement of the parties. There are no prior or present Agreements, representations or understandings, oral or written, which are binding upon either party, unless expressly included in this Agreement. No modification or change of this Agreement shall be valid or binding upon the parties unless in writing and executed by the party or parties intended to be bound by it. This Agreement shall be retained by the Company for a period of 7 years.


**Carnival Cruise Line Standard Seafarer's Terms and Conditions**

<u>**ANNEX 1**</u>

**Length of Contract in Months\***

**\*DOES NOT INCLUDE 14 DAY COMMENCEMENT PERIOD OR ANY SIMILAR GOVERNMENT-MANDATED PERIOD SET FORTH IN PARAGRAPH 2.A. OF THIS AGREEMENT**

| | |
|---|---|
| Hotel Tipping Positions | 6 |
| Hotel Non Tipping Positions | 7 |
| Deck and Engine Petty Officers | 5 |
| Deck and Engine Ratings | 6 |

**CARNIVAL CRUISE LINE WAGE GRIEVANCE POLICY AND PROCEDURE**

**ANNEX 2**

**WAGE GRIEVANCE POLICY AND PROCEDURE**

Carnival's priority is to conduct business in a way that avoids wage disputes with its Seafarers. Carnival, however, recognizes that disputes may still develop and has designed a wage grievance policy to address them.

**A. Persons Covered Under Grievance Policy**
Carnival's wage grievance policy applies to all Seafarers. The grievance policy does not apply to contractual consultants/concessionaires. Any wage claim by any Seafarer under law or contract must be brought under this policy as consideration for new or continued employment.

**B. What is a Wage Grievance?**
A Wage Grievance is any dispute or complaint that a Seafarer may have relating to his or her wages including but not limited to a claim that Carnival has failed to pay adequate wages of any type. However, a Wage Grievance does not include any personal injury, death, Jones Act unseaworthiness, and/or maintenance and/or cure claims or any wage claims for back pay coupled with or asserted along with such personal injury, death, Jones Act, unseaworthiness, and/or maintenance and/or cure claims. A wage grievance does not include claims for benefits, including any claim for medical or partial wage benefit. Those claims are governed by the Arbitration provision and procedure in your Seafarer's Agreement.

**C. Wage Grievance Procedures**
In order to be heard on a particular Wage Grievance, the Seafarer must follow the following steps:
Provided that the Seafarer has access to Fun Time or other comparable pay records, within sixty (60) days of the date on which the Seafarer receives his or her paycheck, the Seafarer must submit a Grievance Form (available at the Paymaster's office) to the Ship's Paymaster. The Paymaster will review the Grievance Form and forward a copy to the Shipboard Department Head or his designee. The Seafarer can also present witnesses and evidence in any form, including written statements, as can any other party to the grievance. The Grievance Form may be submitted in person, by mail, e-mail, and fax or in any other convenient manner, so long as there is a record of delivery to the Paymaster. Within five (5) to thirty (30) business days from receipt of a Grievance Form, Carnival will (1) respond to the grievance in writing, or (2) obtain acknowledgement from the Seafarer that the matter has been resolved. The ruling by Carnival will be final and binding on the parties, subject only to an arbitration process.

**D. Arbitration Process**

(1) If the Seafarer does not agree with the decision reached by Carnival, he must dispute the decision and request arbitration. He can do so by sending written notice to the Legal Department of his claim and requesting arbitration. This written notice must be sent within thirty (30) days of exhausting the grievance policy. If the Seafarer does not meet the thirty (30) day time limit, then he cannot arbitrate his claim and Carnival's decision on his claim shall be final and binding on the Seafarer.
(2) If a request for arbitration is received, then the Legal Department will acknowledge the date in which the request for arbitration was received and will submit an acknowledged copy of the request for arbitration to the Seafarer within ten (10) days after receiving the arbitration request from the Seafarer.
(3) Once a timely arbitration request has been made, the Legal Department will submit the matter to an independent arbitrator in writing. The independent arbitrator will then advise the parties of the arbitration process. There will be one arbitrator. The place of arbitration will be London, England, Panama City, Panama, Manila, Philippines, Miami, Florida or Los Angeles, California, to the exclusion of all others. The Seafarer can appear telephonically or submit written testimony or argument in writing without physically appearing at the location. The parties will use their best efforts to reasonable accommodate the Seafarer's schedule during arbitration. The language of the arbitral proceedings shall be English, but translation services shall be made available at the Seafarer's request. Each party shall bear its own attorneys' fees. The Seafarer shall be required to pay a $ 25 fee or 10% of the outstanding disputed claim, whichever is less, as an arbitration fee.
(4) At the conclusion of the arbitration the result will be binding and final on both Carnival and the Seafarer. Any arbitration under this provision shall be governed by, and all disputes arising under or in connection with the arbitration or Seafarer's service on the vessel shall be resolved in accordance with the law of the flag of the vessel on which Seafarer is assigned at the time the claim accrues, without regard to principles of conflicts of laws thereunder; but the procedures followed in the arbitration shall be those provided by the Arbitration Rules of the International Chamber of Commerce.
(5) The arbitration remedies are the sole and exclusive remedy for a Wage Grievance and each Seafarer waives any right to bring or participate in any class action, group action, collective action, individual action, Seaman's Wage Act penalty claim or other litigation or claim against Carnival for a Wage Grievance.
(6) Carnival will not retaliate against any Seafarer for filing a Wage Grievance or pursuing it in arbitration.
(7) The Seafarer agrees that acceptance of wages and a pay stub or wage statement for a specified pay period is notice that Carnival contends it has paid the Seafarer all wages or other consideration due under contract or law through the last date of the specified period and releases Carnival from any claim for failure to pay adequate wages during the pay period stated in the pay stub or wage statement, unless the Seafarer follows the process set forth above.
(8) Any portion of this Wage Grievance Policy and Procedure statement that is invalid will be severed and the remainder of this policy and procedure will remain valid.

*Wage Grievance Policy:  Version 04/2021*

**CARNIVAL CRUISE LINE GRIEVANCE POLICY**

**ANNEX 3**

**OBJECTIVE**

To comply with the requirements of the Maritime Labor Convention 2006 as required by Flag State.

**SCOPE**

For seafarer complains alleging breaches of the requirements of the Maritime Labor Convention 2006 (including seafarers' rights).

**REQUIREMENTS:**

**1.0 General**

1.1 Any eligible seafarer on board a Carnival Cruise Line vessel shall have the right to lodge a complaint and to have that complaint investigated, provided it is specific in nature and is alleged to constitute a breach of seafarers' rights under the Maritime Labor Convention 2006, or applicable internal procedures.

1.2 Any victimization against a seafarer for filing a complaint is strictly prohibited. Victimization is understood to mean any adverse action taken or threatened by any person with respect to a seafarer for lodging a complaint which is not manifestly vexatious or maliciously made.

1.3 The ship's HR Director has been designated as the person that will provide seafarers with impartial advice on their complaint and assistance with the complaint processing procedures on board the vessel. The Training & Development Manager will substitute in the absence of the HR Director.

**2.0 Complaint Procedures**

2.1 Notwithstanding procedures laid down in an individual seafarer's contract of employment, the following procedures shall be observed.

2.2 Any seafarer with a complaint shall have the ability to have the matter addressed by bringing it to the attention of the proper authority on board, as provided below.

- Seafarer's Supervising Officer
- Shipboard HR Director
- Ship's Paymaster (for wage related issues)
- Master

Seafarer shall have the right to be accompanied and to be represented by another seafarer of his/her choice, on board the ship concerned.

2.3 Complaints shall be sought to be resolved at the lowest level possible; and only when the matter cannot be resolved to the satisfaction of both parties, should it be elevated to the next level.

2.4 Officers and/or crew members shall, within fifteen (15) days from the date of the alleged occurrence of a non-wage grievance, bring the matter to their, Supervising Officer, HR Director, Master or his or her appointee, who each in the chain of command dealing with the grievance shall have a further five (5) days to bring about a solution to the matter through conciliation, provided that this time limit is appropriate to the seriousness of the matter.

2.5 For wage disputes, seafarers employed by Carnival Cruise Line shall submit a Grievance Form to the Ship's Paymaster within sixty (60) days from which seafarer receives his or her paycheck in accordance with the procedures set forth in the above "Wage Grievance Policy and Procedure". Carnival's Wage Grievance Policy and Procedure does not apply to persons not employed by Carnival Cruise Line, such as, but not limited to, persons or seafarers working as or for contractual consultants, concessionaires, independent contractors, or other entities. Such non-employees must submit any such wage disputes to their employer.

2.6 Notwithstanding, in all cases, seafarers shall have the right to complain directly to the Master and, where they consider it necessary, to the Company Shipboard Human Resources Department for conciliation.

2.7 Should a complaint reach the level of the Master, the Master shall:

.1 Conduct an investigation or inquiry in cooperation with the ship's HR Director, as appropriate;
.2 Reference the terms and conditions of employment; and
.3 Seek the advice of the Company's Director HR Shipboard Operations.

2.8 If the Master cannot reconcile the complaint, the non-wage matter should be formally referred to the Company Headquarter, in the person of Vice President Shipboard HR, who must conciliate the matter in accordance with the terms and conditions of employment within 8 days thereafter. For wage disputes, seafarer must dispute the decision by sending written notice to the Company's Legal Department and request arbitration as set forth in the "Wage Grievance Policy and Procedure".

2.9 If a non-wage matter is to the prejudice of the Master, then a seafarer may present his/her case directly to the Company, in the person of the Vice President Shipboard HR or his/her appointee. Until such time as the Company's decision is received on the non-wage matter, the Master's decision shall be binding on all parties.

**3.0** <u>**External Authorities**</u>

3.1  Seafarers shall have the right to file a complaint directly to an appropriate external authority, such as, but not limited to:
- a Flag Administration;
- a Flag Administration Inspector;
- a Port State control official;

3.2  Should a complaint reach the level of external authorities, other than Flag, that authority shall be provided with the contact information for the Maritime Administration and shall be requested to communicate the complaint to them.

3.3  The Maritime Administration shall communicate the complaint to the Company who shall then be expected to resolve the matter in accordance with the terms and conditions of employment to the satisfaction of both parties.

**4.0** <u>**Record Keeping**</u>

4.1  Any record pertaining to filed grievance issues must be retained by shore side office for a minimum of 5 years.

4.2  In all cases a written report has to be completed on board and sent to the Company. The report shall list the details of the complaint, the action taken and the decisions agreed. Copy of the report will be given also to the Seafarer involved. Appropriate entries in the ship's official log book must also be made.

<u>**FLAG STATE COMPETENT AUTHORITY**</u>

1. Registrar General of Shipping and Seamen
   Merchant Shipping Directorate
   Authority for Transport in Malta
   Transport Center - Marsa
   mlc.tm@transport.gov.mt

2. Panama Maritime Authority
   Department of Maritime Labour Affairs
   mlcsegumar@amp.gob.pa
   mlc@segumar.com

3. Bahamas Competent Authority:
   Director of Labour
   c/o The Bahamas Maritime Authority
   Shirlaw Street, P.O. Box n-4679
   Nassau, Bahamas
   stcw@bahamasmaritime.com

4. Contact information for the competent Authority of seafarer's home state can be found on the web by visiting www.imo.org or alternatively team member can contact the HR Director who will assit in helping them obtain this information.

*Grievance Policy: Version 04/2021*